**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**ASHLAND**

**CIVIL ACTION No. 21-80-DLB**

**WURTLAND NURSING and REHABILITATION, LLC;**
**WURTLAND NURSING and REHABILIATION HOLDINGS, LLC;**
**BLUEGRASS CONSULTING GROUP,LLC; and**
**BLUEGRASS CONSULTING GROUP HOLDINGS, LLC**          **PLAINTIFFS**


**v.**                    **MEMORANDUM OPINION AND ORDER**


**SHERRIE HARVEY**
**as Executor of the ESTATE OF CLOTINE HARVEY**                **DEFENDANT**

*** *** *** ***

## I.      INTRODUCTION

This matter is before the Court upon Defendant's Motion to Dismiss (Doc. # 7) and

Plaintiffs' Motion to Compel Arbitration (Doc. # 10). The motions have been fully briefed

by the parties and for the reasons set forth herein, the Court finds that dismissal is not

warranted and that the arbitration agreement which forms the basis of this lawsuit is legal,

binding, and enforceable.

## II.      FACTUAL AND PROCEDURAL BACKGROUND

This case arises from Clotine Harvey's residency at Wurtland Nursing and

Rehabilitation in Wurtland, Kentucky from May 24, 2019, until August 14, 2020.

On April 10, 2017, Clotine Harvey executed a "Durable Power of Attorney"

appointing her daughter, Sherrie Harvey, as her "true and lawful attorney-in-fact, for any

all purposes." (Doc. # 1-3).  The document provides, *inter alia*, that Sherrie Harvey is

"authorized to sign documents, waivers, and releases…." *Id.*

Subsequently, as part of the Wurtland Nursing and Rehabilitation facility's admissions process, Sherrie Harvey executed an Admissions Agreement, which includes an Arbitration Agreement, which provides in pertinent part:

> This agreement to arbitration shall include, but is not limited to, any claim for payment, non-payment, or refund for services rendered to the Resident by the Facility, claims arising out of State or Federal Law, claims based upon breach of contract, breach of fiduciary duty, violation of rights, fraud, or misrepresentation, common law or statutory negligence, gross negligence, malpractice, abuse, neglect or any other claim based on any departure from accepted standards of medical or nursing care, whether such claims be for statutory, compensatory, or punitive damages, and whether arising in the future or presently existing. Any and all claims or controversies arising out of or in any way relating to this Agreement including but not limited to disputes regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, preemption, waiver, or any other defense to enforceability of this Agreement shall be submitted to binding arbitration.

(Doc. # 1-1, p. 10).

Sherrie Harvey signed the Arbitration Agreement for Clotine Harvey above the signature line for Residents or Representative, specifically indicating she was Clotine Harvey's power of attorney, and was signing in that capacity.

Clotine Harvey was discharged from Plaintiffs' facility on August 14,2020. She passed away eleven (11) days later on August 25, 2020.

Defendant alleges that while at Wurtland Nursing and Rehabilitation, Clotine Harvey suffered physical and emotional injuries due to inadequate care, and her health and physical condition deteriorated beyond that caused by the normal aging process.

On October 5, 2021, Defendant filed in the Circuit Court of Greenup County, Kentucky, Case No. 21-CI-00305, a negligence, medical negligence, corporate negligence, and wrongful death action against Wurtland Nursing and Rehabilitation, LLC; Wurtland Nursing and Rehabilitation Holdings, LLC; Bluegrass Consulting Group, LLC; Bluegrass Consulting Group Holdings, LLC, several other corporate entities, and Sarah Gibbs, in her capacity as Administrator of Wurtland Nursing and Rehabilitation.

On November 23, 2021, Wurtland Nursing and Rehabilitation, LLC; Wurtland Nursing and Rehabilitation Holdings, LLC; Bluegrass Consulting Group, LLC and Bluegrass Consulting Group Holdings, LLC, filed this civil action, as Plaintiffs, alleging federal subject matter jurisdiction by virtue of diversity and asking this Court to find the arbitration agreement to be valid and enforceable, to compel Defendant to arbitrate the state court claims, and to enter an order enjoining the Defendant from pursuing her claims in state court.

Defendant seeks a dismissal of all claims alleged herein. She contends that this Court lacks subject-matter jurisdiction, that the arbitration agreement is not enforceable and that the Court should abstain from proceeding in this matter and should not exercise its power to enjoin him from continuing the prosecution of the state court action.

Plaintiffs seek entry of an Order compelling Defendant to proceed to arbitration and, in addition, enjoining her from pursing her claims in state court.

### III.     ANALYSIS

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may assert lack of subject-matter jurisdiction as a defense. Fed. R. Civ. P. 12(b)(1). When jurisdiction is challenged under this rule, the burden is on the plaintiff to prove that jurisdiction exists.

3

*RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

"The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is inflexible and without exception.' " *Mansfield, C. & L.M.R. Co. v. Swan*, 111 U.S. 379, 382, 4 S.Ct. 510, 28 L.Ed. 462 (1884). Federal courts are courts of limited jurisdiction, and subject matter jurisdiction may be obtained only with the existence of diverse parties or a federal question. *Heartwood, Inc. v. Agpaoa*, 628 F.3d 261, 266 (6th Cir. 2010); 28 U.S.C. §§ 1331, 1332.

Neither party asserts the existence of a federal question. Rather, the disputed question is that of diversity. 28 U.S.C. § 1332 provides that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States."

Defendant has not challenged the allegations in Plaintiffs' Complaint concerning the citizenship of the named Plaintiffs in this action. Nor has Defendant challenged the amount in controversy. Rather, she contends that complete diversity of citizenship among the parties cannot be established because Sarah Gibbs, Administrator at the subject facility, named in the state court complaint, but not in this action, is a Kentucky citizen and an indispensable party under Fed.R.Civ.P. 19. He maintains that Brainard's joinder would destroy the complete diversity among parties required by 28 U.S.C. 1332(a)(1).  As such, she seeks dismissal of this case pursuant to Fed. R. Civ. P 12(b)(1) for lack of subject matter jurisdiction.

4

Yet, this Court and other courts within this District have consistently held that the nursing home administrators are not indispensable parties per Rule 19. As this Court explained in *GGNSC v. Hanley*, 2014 WL 1333204 (E.D. Ky. 2014), Rule 19 deals with what were historically known as "necessary" and "indispensable" parties. The terms "necessary" and "indispensable" are terms of art in jurisprudence concerning Rule 19, and "necessary" refers to a party who should be joined if feasible, while "indispensable" refers to a party whose participation is so important to the resolution of the case that, if the joinder of the party is not feasible, the suit must be dismissed. If a necessary party cannot be joined without divesting the court of subject-matter jurisdiction, the Rule provides additional criteria for determining whether that party is indispensable, but if the court finds that the party is anything less than indispensable, the case proceeds without that party, and if, on the other hand, the court finds that the litigation cannot proceed in the party's absence, the court must dismiss the case.

The first step in determining whether the administrators are indispensable is to determine whether they are "necessary". A party is deemed necessary under the Rule if:

> (A) in that person's absence, complete relief cannot be accorded among those already parties; or
>
> (B) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may:
>
> (I) as a practical matter, impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed.R.Civ.P. 19.

5

Defendant's claims against the individual administrator and the Plaintiffs in this case are based on the same occurrence, to-wit, the alleged negligence that resulted in alleged injury to Clotine Harvey. Further, the arbitration agreement governs claims against the corporate parties as well as the administrator. Moreover, if this Court and the state court were to reach different conclusions regarding whether the arbitration agreement is enforceable, the administrator would face inconsistent procedural remedies. Accordingly, the Court concludes that the administrator is not necessary party to the action.

However, that is not the end of the subject matter jurisdiction inquiry. As joinder would destroy diversity jurisdiction, the Court must also determine whether Gibbs is an "indispensable" party. To do so, this Court must balance the following factors: (1) the extent to which a judgment rendered in her absence might prejudice her or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in her absence would be adequate; and (4) whether Plaintiffs would have an adequate remedy if the action were dismissed for non-joinder. Fed.R.Civ.P. 19(b).

Defendant argues that she will not be afforded complete relief in the absence of the administrators in this action.  She asserts that she will be unduly and unnecessarily prejudiced by either a grant of jurisdiction by this Court or by being subjected to arbitration with just the named Plaintiffs, and that such a result would result in duplication of proceedings. The Court will address each of these arguments in turn.

First, the duplication of proceedings in these circumstances is not a disqualifying factor. The Sixth Circuit has rejected of this line of argument in a factually similar case

6

addressing joinder: "[T]he possibility of having to proceed simultaneously in both state and federal court," or in two separate arbitrations for that matter, "is a direct result of [Harvey's] decision to file a suit naming [Wurtland Nursing and Rehabilitation and the individual administrator] in state court rather than to demand arbitration under the [arbitration agreement]." *PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 202 (2001). Moreover, "the possibility of piecemeal litigation is a necessary and inevitable consequence of the FAA's policy that strongly favors arbitration." *Id.* The Court considers that there is low risk that the state court will reach an inconsistent outcome regarding the subject arbitration agreement as it relates to any party. Even assuming such risk, however, this is not the degree of prejudice required to conclude an absent party is indispensable. *Id.* at 203. Determining whether the dispute as it relates to Wurtland Nursing and Rehabilitation is subject to arbitration is a simple matter of contract interpretation and does not require the presence or input of the individual administrator. *Id.* The prejudice Defendant fears does not present the degree of prejudice necessary to support a conclusion that the administrators are an indispensable party. Furthermore, "[w]here the risk of prejudice is minimal, the Court need not consider how protective provisions in the judgment, the shaping of relief, or other measures might reduce the risk of prejudice." *Id.* at 205.

With regard to the adequacy of available relief, the administrator's status as an alleged joint tortfeasor is not dispositive of the Rule 19(b) inquiry. Indeed, the United States Supreme Court has explicitly rejected this theory as a *non sequitur*. *Temple v. Synthes Corp., LTD.*, 498 U.S. 5, 8, 111 S.Ct. 315, 112 L.Ed.2d 263 (1990) (holding that a party's status as a joint tortfeasor does not make them a necessary or indispensable

party but simply a permissive party to an action against one of them).

Finally, although an adequate remedy exists in state court even if this Court were to dismiss the case, this is not enough to tip the balance in favor of joinder.

On balance, the factors do not dictate that the Court find the individual administrator an indispensable party. As such, the failure to join him does not warrant dismissal.

The undersigned is not alone in so finding. In *GGNSC Louisville Hillcreek, LLC v. Warner*, 2013 WL 6796421 (W.D. Ky., 2013), Judge Heyburn found that subject matter jurisdiction existed even without the administrator defendant. He analyzed the Rule 19 factors, namely: "(1) the extent to which a judgment rendered in [the administrator's] absence might prejudice [the administrator] or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures; (3) whether a judgment rendered in [the administrator's] absence would be adequate; and (4) whether Golden Gate would have an adequate remedy if the action were dismissed for non-joinder." *Id.* at *3. He concluded that the duplication of proceedings is not a disqualifying factor, the risk of prejudice to Defendant was minimal, and an administrator's status as a joint tortfeasor does not make them an indispensable party. *Id.* at *3-*4.

Similarly, in *Brookdale Senior Living, Inc. v. Stacy*, 2014 WL 2807524 (E.D. Ky., 2014),  Judge Caldwell analyzed Rule 19 and applied the Sixth Circuit's analysis in *Paine Webber*, as well as other nursing home matters from the district to conclude that "a nursing-home administrator is not an indispensable party when she is joined in the underlying state court action." *Id.* at *6. Chief Judge Danny Reeves' opinion in *Brookdale*

*Senior Living, Inc. v. Caudill*, 2014 WL 3420783 (E.D. Ky., 2014) is equally persuasive. "After balancing the factors of Rule 19(b) and considering the Sixth Circuit's rejection of nearly-identical arguments, the Court finds that the state court administrators are not indispensable parties." *Id.*

The District Courts of Kentucky as well as the Sixth Circuit have repeatedly addressed, and rejected, Defendant's jurisdictional and indispensable party arguments. *See e.g., GGNSC Vanceburg, LLC v. Hanley*, 2014 WL 1333204 (E.D.Ky., 2014); *Golden Gate Nat. Senior Care, LLC v. Estate of Blevins ex rel. Patton*, 2015 WL 1467927 (E.D.Ky., 2015); Diversicare Leasing Corp. v. Strother, 2015 WL 1802661 (E.D.Ky., 2015); *Diversicare Leasing Corp. v. Johnston*, 2015 WL 1802842 (E.D.Ky., 2015); *Golden Living Center-Vanceburg v. Reeder*, 2016 WL 4706924 (E.D.Ky., 2016); *Golden Gate Nat. Senior Care, LLC v. Jones*, 2016 WL 4744151 (E.D.Ky., 2016); *Golden Gate National Senior Care, LLC v. Leach*, 2018 WL 738974 (E.D.Ky., 2018); *Diversicare Leasing Corp. v. Hamilton*, 2018 WL 3235787 (E.D.Ky., 2018). The case law is clear - this court has proper subject matter jurisdiction and the parties before the court are properly diverse.

Nor does the Supreme Court's rationale in *Vaden v. Discover Bank*, 556 U.S. 49, 129 S.Ct. 1262, 173 L.Ed.2d 206 (2009), tip the scales in Defendant's favor with regard to jurisdiction, or, more precisely, the lack thereof. In *Vaden*, Discover Bank sued a credit card holder in state court to recover past-due charges. The credit card holder filed a counterclaim, also asserting state-law claims. Yet Discover Bank believed these claims were preempted by federal law and filed an action in federal district court to compel arbitration of the counterclaims. The Supreme Court held that the district court lacked jurisdiction because the federal issue arose within the context of the state-court

9

counterclaim, and federal courts cannot consider counterclaims when assessing federal question jurisdiction. Accordingly, the Supreme Court directed district courts to "look through" the arbitration action and determine whether federal question jurisdiction exists based on the underlying state-court suit. *Id.* at 62.

Defendant urges that the logic of *Vaden* applies with equal force in cases resting on diversity jurisdiction. She argues that the Court should "look through" this case and determine whether it would have jurisdiction over the state suit, which includes the non-diverse nursing home administrator. However, this argument was explicitly rejected by Judge Caldwell in *Brookdale.* She noted that the Supreme Court did not include diversity jurisdiction in its holding, despite acknowledging that diversity jurisdiction exists as a separate method for bring a claim pursuant to the Federal Arbitration Act. *Brookdale*, 27 F.Supp.3d at 782.

Accordingly, this Court will decline to "look through" the present action to determine whether it would have diversity over the state-law suit.

For all of these reasons, this Court finds the requirements of diversity jurisdiction have been met and this Court has proper subject matter jurisdiction over this case.

Defendant argues that, even if this Court finds that it has jurisdiction over this case, it should abstain from hearing it.  The Supreme Court has long recognized that federal courts should sometimes abstain from exercising jurisdiction over a case that "involves substantially the same issues and substantially the same parties as a parallel case in state court." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, at 817 (1976)). However, because "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress," *Quackenbush v. Allstate Ins. Co.*,

517 U.S. 706, 716 (1996), abstention "'is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'" *Colorado River*, 424 U.S. at 813 (*quoting County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–189 (1959)). For this reason, "[o]nly the 'clearest of justifications will support abstention.'" *RSM Richter, Inc. v. Behr Am., Inc.*, 729 F.3d 553, 557 (6th Cir. 2013).

When determining whether abstention is appropriate under the *Colorado River* doctrine, district courts consider and weigh eight factors: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002). "The decision to dismiss a federal action because of a parallel state-court action rests 'on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Id*.

The first factor is inapplicable. With regard to the second factor, Defendant does not address how the federal forum would be less convenient to her or other parties as both courts are in Eastern Kentucky. As such, these two factors weigh against abstention and in favor of exercising jurisdiction.

The third factor, which aims to avoid piecemeal litigation, requires analysis that is similar to the one undertaken when determining whether parties are indispensable in as much as it asks the Court to consider "whether there is a 'clear federal policy evinc[ing] .

. . the avoidance of piecemeal adjudication' found within the statutory scheme at issue."

*Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467

(6th Cir. 2009) (*quoting Colorado River*, 424 U.S. 800, 819); No such policy exists when

considering a case under the Federal Arbitration Act. *Id*. The fourth factor weighs in favor

of abstention as the state court case was filed four months earlier.

The fifth factor weighs in favor of exercising jurisdiction because "the FAA provides

the source of law for interpreting the arbitration clause[]" in the subject agreement.

*PaineWebber*, 276 F.3d at 208.

The sixth factor, whether the state court action may adequately protect the federal

plaintiff's rights, "presents the strongest basis for abstaining" because "[t]he FAA extends

Congress's legislative authority to the maximum extent permitted under the Commerce

Clause and is therefore binding on state courts that interpret contracts involving interstate

commerce." *Id.*

 Factor seven is similar to the fourth factor in that it asks the Court to consider the

relative stage of the two proceedings. The state court action is still in the pleading stage

as Plaintiffs' Complaint in this Court was filed shortly after their Answers to Defendant's

Complaint were served in the state court action. (Doc. # 9, p. 23). Thus, this factor weighs

in favor of this Court's jurisdiction.

Under the eighth factor, the Court considers whether there is concurrent

jurisdiction. Here, concurrent jurisdiction exists between the state and federal courts, but

"a congressional act provides the governing law and expresses a preference for federal

litigation." Consequently, this factor is insufficient to justify abstention. *Id*.

12

In sum, factors four, six, and eight weigh in favor of abstention, but neither factors four or eight provide a strong reason to abstain. In light of these circumstances, and the fact that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule," *Colorado River*, 424 U.S. at 813, the Court will not abstain.

Defendant also seeks dismissal pursuant to Fed. R. Civ. P 12 (b)(6) for failure to state a claim upon which relief may be granted. Specifically, she contends that arbitration agreement is invalid and unenforceable.

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The Kentucky Supreme Court has held that the FAA applies to arbitration agreements between long-term care facilities in Kentucky and their residents. *Ping v. Beverly Enterprises*, 376 S.W.3d 581, 589-90 (Ky. 2012).  Once prima facie evidence of the arbitration agreement is presented, the burden shifts from the party seeking to enforce the agreement to the party seeking to avoid the agreement. *Louisville Peterbilt, Inc. v. Cox* 132 S.W.3d 850, 857 (Ky. 2004) (citing *Valley Constr. Co., Inc. v. Perry Host Mgmt. Co.,* 796 S.W.2d 365, 368 (Ky. App. 1990)). However, "[t]he party seeking to avoid the arbitration agreement has a **heavy** burden." *Id*. (emphasis added).   The burden is onerous due to the "strong federal policy in favor of arbitration." *Hurley v. Deutsche Bank Trust Co. Ams.,* 610 F.3d 334, 338 (6th Cir.2010) (*quoting Albert M. Higley Co. v. N/S Corp.,* 445 F.3d 861, 863 (6th Cir.2006)). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In denying the validity of the arbitration clause, Defendant argues that the power of attorney given to her is not broad enough to have given her authority to sign an arbitration agreement for Clotine Harvey's' personal injury claims.

Until 2017, "Kentucky courts routinely 'declined to give effect to ... arbitration agreements executed by individuals holding powers of attorneys.' " *Preferred Care, Inc. v. Aaron*, 2017 WL 3319378, at \*7 (E.D. Ky. Aug. 3, 2017) (quoting *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1424-25 (2017)). The Kentucky Supreme Court had determined that " 'a general grant of power (even if seemingly comprehensive) does not permit a legal representative to enter into an arbitration agreement for someone else." ' *Id.* (quoting *Kindred*, 137 S. Ct. at 1425). Rather, to form such a contract, the power of attorney must contain language specifically authorizing the representative to waive the principal's constitutional rights to access to the courts and to trial by jury. *GGNSC Louisville Camelot, LLC v. Coppedge*, 2017 WL 3430579, at \*4 (W.D. Ky. Aug. 9, 2017). However, the United States Supreme Court recently rejected this view. In *Kindred Nursing Centers Ltd. P'ship v. Clark*, 137 S. Ct. 1421, 1426-27 (2017), the Supreme Court held that "[t]he Kentucky Supreme Court's clear-statement rule [announced in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 327 (Ky. 2015) ] ... fails to put arbitration agreements on an equal plane with other contracts." The Supreme Court determined that such a rule "single[d] out arbitration agreements for disfavored treatment" and thus, violated the FAA. *Kindred*, 137 S. Ct. at 1425.

"Following *Kindred*, then, the proper inquiry is whether the grant of authority contained in the power of attorney is 'sufficiently broad to cover executing an arbitration agreement.' " *Coppedge*, 2017 WL 3430579, at \*5 (quoting *Kindred*, 137 S. Ct. at 1429).

14

Here, the power of attorney vested Defendant with the authority "for any all purposes" including the "Authority…to sign documents, waivers, and releases…." (Doc. #1-3, p. 41-42). This broad language unquestionably encompasses the power to enter into an arbitration agreement.  In *Diversicare Leasing Corp. v. Allen*, 2017 WL 4443169 (E.D.Ky. 2016), this Court found that a power of attorney which included the "authority to execute consents, waivers and releases of liability" granted sufficient authority to the agent to sign a pre-dispute arbitration agreement. *Id.* at *3.  Almost identical language is used in Harvey's power of attorney.  The Court finds no reason to stray from the conclusion in *Allen* and further finds that the arbitration agreement is enforceable.

Under the terms of the arbitration agreement, Defendant must submit her claims to arbitration. However, the question remains whether this Court should enjoin her from pursuing her parallel action in state court. The Court finds that such an injunction is necessary, and the Defendant is enjoined from proceeding in Greenup Circuit Court. "Although the FAA requires courts to stay their own proceedings where the issues to be litigated are subject to an agreement to arbitrate, it does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Companies*, 288 F.3d at 893 (6th Cir. 2002) (internal citations omitted). For this reason, "the District Court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti Injunction Act." *Id.* Pursuant to the Anti-Injunction Act, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

An injunction in this case "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.' " *Great Earth*, 288 F.3d at 894. The Court has determined that the parties entered into a binding arbitration agreement covering the scope of Defendant's claims. Having made such a determination and compelling her to submit to arbitration, it is necessary to enjoin Defendant from pursing her claims in any alternative forum, including state court. Otherwise, she would be permitted to circumvent his arbitration agreement and in doing so, circumvent this Court's judgment that she be compelled to arbitrate his claims. Accordingly, the Court will order that Defendant be enjoined from proceeding with her pending state court action.

A valid and binding arbitration agreement was executed. Therefore, this matter must be referred to arbitration.

## IV.   CONCLUSION

For the reasons set forth herein,  **IT IS HEREBY ORDERED** as follows:

(1)     Defendant's Motion to Dismiss [Docket No. 7] is **DENIED**;

(2)     Plaintiffs' Motion to Compel Arbitration and to Enjoin Defendant [Docket No. 10] is **GRANTED**;

(3)     Defendant shall prosecute all of her claims arising out of Clotine Harvey's residency at Wurtland Nursing and Rehabilitation Center in Greenup, Kentucky in accordance with the terms of the arbitration agreement;

(4)     This matter is hereby **DISMISSED WITH PREJUDICE** and **STRICKEN** from the active docket of the Court; and

(5)     This Court will retain jurisdiction over this matter for the purpose of enforcing any arbitration award.

This 17th day of August 2022.



Signed By:

_David L. Bunning_   DB

United States District Judge